# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTEN SMITH, | : |
|       Plaintiff, | :    **17 CV 03401** |
| | : |
| v. | :    **COMPLAINT AND JURY DEMAND** |
| | : |
| STEPHEN ROBERT, in official and | : |
| personal capacity,  PILAR CRESPI | : |
| ROBERT,  ALEXI COSCOROS, in | : |
| official and personal capacity,  SOURCE | : |
| OF HOPE, LLC. and John and Jane | : |
| Does 1 -4, being as yet unknown actors | : |
| or entities. | : |
| | : |
|       Defendants. | : |
| | : |

This cause of action arises from the abhorrent sexual harassment (hostile work environment) and related abuse including retaliatory discharge, assault and stalking, fourth degree, as defined by the New York Penal Code, of Plaintiff by Defendant Alexi Coscoros, while employed by Defendant Source of Hope LLC and by Stephen Robert and the other Defendants. This action alleges violations of New York State Human Rights Law N.Y. Executive Law "291, 296-a (McKinney 2005) and the New York City Human Rights Law Administrative Code of the City of New York, Title 8 , as well as the New Jersey Law Against Discrimination (NJLAD) (N.J.S.A. 10:5-1 et seq.) and the New Jersey Conscientious Employee Act. (CEPA) N.J.S.A.

1

34:19-1 et seq.) Defendants are also liable under relevant Federal law, e.g. Title VII of the Civil Rights Act of 1964.

# I. JURISDICTION AND VENUE

1. This court has jurisdiction under 28 U.S.C. 1332 because there is diversity of citizenship and an amount in controversy greater than $75,000.

# II. THE PARTIES

2. Plaintiff is  a female resident of the State of New Jersey over the age of forty and was employed by Source of Hope Foundation which was located at 667 Madison Avenue, Suite 17B, New York, NY 10065.

3.  Defendant Stephen Robert is a founder, trustee and co-chairman with his wife, of Source of Hope Foundation and is a highly sophisticated and extremely successful man of great influence and power. .

4. Defendant Pilar Crespi Robert is a founder, trustee and co-chairman with her husband of Source of Hope Foundation also highly successful and prominent and of great influence.

5. Defendant Alexi Coscoros was employed at Source of Hope LLC as the Portfolio Manager for it and related family funds.

6. Source of Hope LLC, is a entity controlled, upon information and belief, by the same principals involved in Source of Hope Foundation,  that manages the funds for, inter alia, Source of Hope Foundation, a nonprofit company whose stated purpose is to "help people in desperate

needs through a holistic approach" and has, upon information and belief, assets in excess of 160 million dollars.

## III. APPLICABLE LAW AND POLICY

7. *Inter alia,* this action alleges violations of the New York State Human Rights Law , N.Y. Executive Law Sec.s 291, 296-a  (McKinney 2005); and

8. The New York City Human Rights Law (NYCHRL) Administrative Code of the City of New York, Title 8.Sec. 8-107, et seq.  NYCHRL is now 1 construed as more extensive than its federal and state counterparts. *Dillon v. Ned Management,  85 F.Supp.3d 639 (ED 2015).  Weinstein. See, also,  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 108B09 (2d Cir.2013) and provides that individual defendants are subject to liability under NYCHRL. *See e.g., Feingold v. N.Y.,* 366 F.3d 138, 158B59 (2d Cir.2004).10. The New Jersey Law Against Discrimination (NJLAD (N.J.S.A. 10:5-1 et seq.) to the degree that it is as extensive as or more extensive than the NYCHR;

9. The New Jersey Conscientious Employee Act. N.J.S.A. 34:19-1 et seq. to the extent that it is more extensive than the NYCHR.

## IV. FACTS COMMON TO ALL COUNTS

10. Defendant Alexi Coscoros started work on or about March 1, 2014, as the Portfolio Manager

---

[1]Pursuant to the 2005 amendment by  the New York City Council to the NYCHRL in the form of the Local Civil Rights Restoration Act of 2005 (the Restoration Act)). *See* N.Y.C. Local L. No. 85; *Loeffler v. Staten Island University Hosp.,* 582 F.3d 268, 278 (2d Cir.2009) (explaining that NYCHRL claims require independent analysis even if state and federal laws contain comparable language).

for various large funds.

   a. Three of the four funds were private funds (for Pilar Crespi Robert and her

   grandchildren/Sebastian's children, in excess of $400,000,000.00).

   b. Only one of the four funds administered by Defendant Coscoros related to to Source of

   Hope.

   c. Despite the fact that most of Defendant Coscoros' duties related to these private funds,

   he was nonetheless paid entirely by Source of Hope, Inc., a 501c3 non profit.

   d. Upon information and belief, Coscoros had been hired because of a personal

   relationship withe Sebastian Echavarria, son of Defendant Pilar Crespi Robert, even

   though he had been terminated for cause, upon information and belief, by Tiedemann

   Wealth Management.

11. Within months of his arrival, upon information and belief, Defendant Alexi Coscoros

exhibited his sexist, demeaning, and violent conduct toward female employees and colleagues

(for example Nicole DeRoker, who had previously reported to Defendant Coscoros when she

had worked at Source of Hope, even warned Plaintiff upon her arrival that Defendant Coscoros

was dangerous).

12. On or about August 1, 2015, Plaintiff Kristen Smith, who had an excellent work history, was

hired by Stephen Robert to be an Executive Assistant to Defendant Coscoros even though

Defendant Robert knew or should have known of Defendant Coscoros' abusive nature.

13. Although Plaintiff had been warned by other women that Defendant Coscoros was

dangerous, he was initially very charming to plaintiff.

14. However, within weeks of Defendant Coscoros' arrival, he began to act in an aggressive

4

and threatening manner so that by November 2015, plaintiff Kristen Smith was very frightened and anxious about him and over the next year and a half Plaintiff endured such things as:

a. Defendant Coscoros was also constantly violating boundaries with plaintiff. Thus, for example, he repeatedly entered her office when she was not there.

b. Although she locked her desk, on or about April/May of 2016, Defendant Coscoros went into the desk and took plaintiff's tampons out and left them on her desk for plaintiff to discover to her extreme discomfort the next day. .

c.. Defendant Coscoros also harassed Plaintiff because of a gynecological condition she was suffering from and made her afraid to seek accommodations for treatment.

d. Defendant Coscoros also violated her privacy related to her medical condition when he excoriated her in public that she should just "freeze her eggs."

e. Defendant also violated Plaintiff's boundaries, privacy and violated privacy, medical condition rights and HIPAA rights by, *inter alia*, accusing plaintiff of malingering and by calling Weill Cornell Medical Center where Plaintiff was receiving medical treatment in an attempt to access her records.

f, This hostile work environment which is sexist (and therefore sex based) became the norm and the conditions were such to make the woman of ordinary sensibility offended, anxious, depressed and fearful.

g. Indeed, the other females who work at Source of Hope or related companies all were terrified of Defendant Coscoros. These include

i. Gina Gulino, executive assistant to Stephen Robert, who, upon

5

information and belief, had become afraid of Defendant Coscoros prior to Plaintiff's arrival at the firm in August 2015, was aware of the abuse of plaintiff by defendant Coscoros and was so frightened of Coscoros that she had the locks changed on her doors.

ii. Marissa Thornton,  worked for Sabricas, Inc., the company run by Defendants' son  Sebastian Echavarria in the same physical space as Defendant  Coscoros and Plaintiff, though her employer was Sabricas. Ms. Thorton  was petrified of Defendant Coscoros and refused to be any place alone  with him.

iii. Nicole DeRoker who had previously reported to Defendant Coscoros when she had worked for Source of Hope was, herself, very frightened of Defendant Coscoros and had had to seek treatment for psychological injury from him and she validated Plaintiff's experience of Defendant Coscoros as threatening and dangerous and Ms. DeRoker, also feared for Defendant Stephen Robert and Pilar Robert because she realized that he could be a basis of liability for them.

15. On or about December 15, 2015, Defendant Coscoros called plaintiff into his small office and slammed the wooden door behind him.

16. Defendant Coscoros proceeded to berate and shout at plaintiff while punching  his fist into his other hand over her head.

17. Plaintiff had come to feel  physically threatened by Defendant Coscoros and after the December 15th event,  she communicated this via email to Defendant Stephen Robert and to

Defendant Coscoros.

18. Nonetheless, on or about December 17, 2015, Defendant Coscoros screamed, yelled and flailed in his arms around plaintiff in a manner that alarmed and upset plaintiff.

19. On the 17th, after being berated, Defendant Coscoros brushed past Plaintiff so that he phyically touched her and grabbed his coat and slammed the door.

20. Plaintiff again made email notification of the harassment to Defendant Robert and Defendant Coscoros and Plaintiff acknowledged her feelings of intimidation and how she was uncomfortable with his reaction/behavior

21. In January or February 2016, Defendant Robert finally met with Plaintiff to discuss the abuse of Defendant Coscoros

22. In late February, the work space transitioned to a WeWork arrangement where Plaintiff and Defendant Coscoros were on different floors which was, upon information and belief, intentional on the part of Defendant Coscoros who did not want Plaintiff to know where he was and to sideline her from the work of the office.

23. Defendant Coscoros also removed Plaintiff from access to his email and to his schedule which, upon informtion and belief, was to allow a pretextual charge of non performance to be made against plaintiff..

24. At the end of March 2016, Defendant Coscoros unexpectedly coming into Plaintiff's office and threatened her job and also made accusations that she was behaving like a "simple assistant."

25. In response to this attack by Defendant Coscoros, Plaintiff wrote via email to Defendant Coscoros, documenting her own performance and taking issue with the accusations leveled

7

against her by him, e.g., as relates to Plaintiff's attendance, performance and work product.

26. On April 15, 2016, Defendant Coscoros without warning entered Plaintiff's small office (roughly 6' x 10') and slammed the glass door and began hectoring plaintiff brusquely and in a pressured manner asking- "Is this relationship working?" And: " How can you [plaintiff], continue working because you take so long on tasks?"

27. Defendant Coscoros went through a list of unfair complaints and by the end was screaming and finished by yelling: "Just get it done," while again slamming one of his fists into the palm of his other hand while standing over plaintiff's desk while she sat below him.

28. Plaintiff tried to object but Defendant Coscoros put up his hand to stop her and screamed: "think really hard before you speak- really hard!...I don't want your excuses."

29. Immediately or nearly immediately after this physically agressive attack of Defendant Coscoros on or about April 15, 2016, Plaintiff sent a copy of the email that she had sent to Coscoros the previous month, March 2016, to Defendant Robert.

30. Defendant Coscoros next spoke to Plaintiff on or about April 27, 2016, when he came to plaintiff's office unannounced and told plaintiff to follow him to a conference room where he ordered her to "sit there."

31. He then threw a piece of paper on the table and said it was a list of days that she had not been in the office (in fact plaintiff had been in the office but had used the freight elevator because she had her bicycle with her and so her arrival and departure were not logged on those days).

32. Defendant Coscoros did not let plaintiff speak at this meeting, would not answer her questions, and merely piled up accusations so that Plaintiff began crying which caused

Defendant Coscoros to mock her and say, "Please!"

33. The conference room was all glass so Plaintiff's humiliation was very public and there were many observing it. .

34. Defendant Coscoros taunting plaintiff asking: "What are you just a simple secretary?" in a way that was sexist and demeaning.

35. On May 2, 2016, Plaintiff emailed Gina Gulino, the executive assistant of Stephen Robert, to advise that she felt "intimidated and [that her] position [was] threatened if [she were to] document any incidents...."

36. Plaintiff stated to Ms. Gulino that she did not "feel safe...[and because of]...the bullying or threats....I don't know who [sic] I can speak with about what is going on which is why I have sought out your guidance."

37. In May, Defendant Robert met with Plaintiff and followed up with an email on May 20, 2016, and said "I hope things are moving in a better direction."

38. Defendant Robert's office and Defendant Coscoros were notified in May 2016 that Plaintiff was undergoing treatment for a gynecological condition which threatened her life and fertility.

39. In June 2016, Plaintiff advised Defendant Coscoros that a medical condition that she had been suffering would require treatment and that she would need some accommodations.

    a. Plaintiff had developed this serious gynecological condition which threatened her life and her fertility, upon information and belief, in the first part of 2016.

    b. Upon information and belief, the wrongful treatment of Plaintiff by defendants and the attendant anxiety and stress is a legal cause of Plaintiff's illness.

    c. In June 2016, Plaintiff advised Defendant Coscoros that her medical condition would

require treatment and that she would need some accommodations.

d. The request for accommodations became yet another basis for Defendant Coscoros'
attacks and derision.

e   The wrongful discharge has imperiled Plaintiff's recovery because it has caused her
extreme distress.

f. In addition, the wrongful discharge will result in loss of medical coverage so may
cause plaintiff to lose treatment which will have potentially catastrophic effects on
Plaintiff's physical and emotional well being.

40. After weeks of Plaintiff asking Defendant Coscoros to review various documents, e.g. the
Coatue Qualified Partners Subscriptions which were due before September 30, 2016,  on or
about September 26 or 27, 2016,  Defendant Coscoros summoned Plaintiff to his office where he
proceeded to berate plaintiff causing her to suffer extreme anxiety so that she began to shake
physically .

41.  After being berated in Defendant Coscoros' office, Plaintiff returned to her own office only
to be followed there a short while later by Defendant Coscoros who came in to her office and
slammed the door shut and shouted that he did not want to work with plaintiff because  she was
unreliable and because she was using her medical condition to evade responsibility.

42. Defendant Coscoros was yelling in an angry manner  the entire time and he  refused to let
Plaintiff interject so that the gentleman in the next office stood up and peered into Plaintiff's
office and when Defendant Coscoros left the gentleman knocked on her door and asked Plaintiff
if she was ok?

43. Plaintiff began to cry and the gentleman said that if she ever needed help or was in danger

that she should just knock on the wall and he would intervene.

44. Plaintiff reported this incident to Gina Gulino, Defendant Robert's executive assistant, and also to Shimon Wolf, the outside accountant for the firm.

45.  On or about September 28, 2016, Plaintiff discovered that someone had called Weill Cornell Hospital  to access information Plaintiff's medical billing and treatment records and, upon information and belief telephone records indicate that the illegal, imporoper and invasive  call was placed by Defendant Coscoros.

46. Plaintiff complained about this disturbing and illegal  breach of her medical privacy at this time to Shimon Wolf.

47. As a result of this email, upon information and belief,  outside accountant, Shimon Wolf, advised that an investigation should be done by an outside agent to limit exposure of the Defendants other than Coscoros.

48. As a result,  Donna Lazarus, Esq., of Schulte Roth, was hired to do an investigation and she interviewed all the employees (Plaintiff being interviewed on September 30, 2016).

49. On or about October 6, 2016,  the outside accountant, Shimon Wolf,  conveyed his good wishes to plaintiff  and acknowledged Defendant Coscoros'  behavioral issues and, in response, Plaintiff  thanked Shimon and expressed that the environment and Defendant Coscoros' behavior has become so unmanageable and how distressed that she felt as she never knew when he was going to explode. ·

50. On or about October 9, 2016, Defendant Robert called Plaintiff from Italy to express his apologies for Defendant Coscoros' conduct which he described as "abhorrent."

51.  Plaintiff was informed by Defendant Robert that they were looking for a replacement for

Defendant Coscoros and Defendant Robert asked for time and Plaintiff's patience, while they conducted their search for a replacement.

52. Upon information and belief,  Defendant Coscoros was advised that his employment relationship with Source of Hope would be ending on November 21, 2016, and the locks to Source of Hope were changed, to protect Gina Gulino.

48. However, Defendant Coscoros  continued to have access to both his office and Plaintiff's office until November 28th or 29th and no security provisions were put in place to safeguard Plaintiff from Defendant Coscoros.

53. Upon information and belief, negotiations took place over the next month over the terms of this separation.

54. On December 21, 2016, the last day of work before the Christmas holiday, Plaintiff was fired from Source of Hope three hours after Defendant Robert received the signed separation agreement of Defendant Coscoros.

55. Within weeks of beginning to work for Defendants, Plaintiff began to experience depression, anxiety and feelings of helplessness and by early 2016 was suffering from a life threatening gynecological condition.

56. Plaintiff also began to be unable to sleep which increased her anxiety and depression.

57, Meanwhile, Defendant Coscoros' abuse only escalated and no one intervened to help.

58. Plaintiff sought treatment from a mental health professional and was placed for the first time in her life on psychotropics to treat her anxiety and depression.

59. Upon information and belief, other women employed by  Defendant Robert  also sought treatment for anxiety and depression as a result of sexual harrasment by Defendant Coscoros

59. Upon information and belief,  after an investigation was finally initiated because of Plaintiff's complaints,   Defendant Coscoros left with a separation agreement that safeguarded his reputation and paid him, upon information and belief, at least $250,000 in severance.

60.  Plaintiff, on the other hand, was terminated even though she had previously been promised that her job would continue and been offered $25,000.00 to relinquish all her rights, to agree to say nothing disparaging about defendants and was told by Defendant Robert that he hoped that she "appreciated this very generous offer given that [she] had only worked there for a year and a half." or  words to that effect.

61. Plaintiff is suffering from a serious gynecological  condition with devastating consequences that is tied to the wrongful conduct of defendants and is now an emotional wreck and has had her professional confidence shaken and is now suffering from anxiety and depression and remains on medication and, on top of all this, as a woman now over 40, has to deal with bias in the financial industry of hiring older workers.

62. Despite the fact that Defendants are unusually wealthy, educated, and sophisticated and powerful, they had no anti sexual harassment policy, written or oral, or, indeed, any policy regarding work place discrimination.

63.  Defendants had, for example, no employee handbook.

64. Defendants did not, for example, post any instructions or circulate and memoranda addressing discrimination.

65.  Defendants did not have any person outside the chain of command to take reports of discrimination and conducted no training, no seminars etc. .

66.  Upon information and belief, Defendants, indeed, were so deficient in managing the

workplace that employer liability insurance was denied to Source of Hope Foundation as an entity and to the individual actors.

## COUNT I
## SEX BASED DISCRIMINATION (HOSTILE WORK ENVIRONMENT)

67. The conditions that plaintiff has endured constitute a hostile work environment.

68. As described above, the conditions of employment were such that no reasonable woman would bear it.

69. Plaintiff has suffered severe and permanent emotional and mental distress.

70. Plaintiff's female sex was a "but for" cause of the hostile work environment.

71. By acting as aforedescribed, defendants acted with malice or with reckless disregard for plaintiff's rights, causing her injury and entitling her to money damages in the amount of $10,000,000.00

## COUNT II
## DISABILITY BASED DISCRIMINATION (HOSTILE WORK ENVIRONMENT)

72. Plaintiff repeats and re-alleges the facts asserted in paragraphs 1 through 71 above as if restated fully herein.

73. In addition to Plaintiff's sex, Defendant Coscoros was also motivated to harass and mistreat Plaintiff because of her medical condition.

74. By acting as aforedescribed, defendants acted with malice or with reckless disregard for plaintiff's rights, causing her injury and entitling her to money damages in the amount of an additional $5,000,000.00

## COUNT III

14

**WRONGFUL DISCHARGE (SEX BASED/ WHISTLE BLOWER LIABILITY)**

75. Plaintiff repeats and re-alleges the facts asserted in paragraphs 1 through 74 above as if restated fully herein.

76. Defendant Coscoros was known to be a sexual harasser prior to Plaintiff's hire.

77. Defendant Coscoros warned Plaintiff that if she reported him she would be terminated.

78. Plaintiff did, in fact, make repeated complaints to Defendants Coscoros and Robert and to Gina Gulino.

79. Plaintiff was, in fact, terminated by Defendants because she made these complaints.

80. Alternatively, the dissolution of the Unit was a pretext to allow this discriminatory behavior or, in the alternative, to obscure liability.

81. By acting as aforedescribed, defendants acted with malice or with reckless disregard for plaintiff's rights, causing her injury and entitling her to money damages in the amount of an additional $5,000,000.00

**COUNT III**
**INVASION OF PRIVACY (UNAUTHORIZED INQUIRY TO MEDICAL PROVIDERS)**

82. Plaintiff repeats and re-alleges the facts asserted in paragraphs 1 through 81 above as if restated fully herein.

83. . Defendant Coscoros sought to get information about Plaintiff's medical condition by wrongly using her personal identifying information to get reports or other information from Cornell Weil Medical Center.

84. Defendant Coscoros had no authority to access this private information and this is a violation of common law privacy rights, privacy rights guaranteed by civil rights laws such as the

NYCCHR and the NJLAD.

85. By acting as aforedescribed, defendants acted with malice or with reckless disregard for plaintiff's rights, causing her injury and entitling her to money damages in the amount of an additional $5,000,000.00

## COUNT IV
## ASSAULT

86. Plaintiff repeats and re-alleges the facts asserted in paragraphs 1 through 85 above as if restated fully herein.

87. Defendant Coscoros repeatedly acted in a harmful and offensive manner to Plaintiff so that Plaintiff was put in an imminent apprehension of an imminent and unwelcomed and uninvited and harmful physical contact.

88. By acting as aforedescribed, defendants acted with malice or with reckless disregard for plaintiff's rights, causing her injury and entitling her to money damages in the amount of an additional $5,000,000.00

## COUNT V
## STALKING

89. Plaintiff repeats and re-alleges the facts asserted in paragraphs 1 through 88 above as if restated fully herein

90. Stalking, a civil analog to Penal Law 120.40 is a crime of the fourth degree and its elements are:

> a. A person is guilty of stalking in the fourth degree when he or she intentionally,
> and for no legitimate purpose, engages in a course of conduct directed at a

specific person, and knows or reasonably should know that such conduct:

b.. is likely to cause reasonable fear of material harm to the physical health, safety

or  property of such person, a member of such person's immediate family or a

third partywith whom such person is acquainted; or

c. causes material harm to the mental or emotional health of such person, where

such conduct consists of following, telephoning or initiating communication or

contact with such person, a member of such person's immediate family or a third

party with whom such person is acquainted, and the actor was previously clearly

informed to cease that conduct; or

d.  is likely to cause such person to reasonably fear that his or her employment,

business or career is threatened, where such conduct consists of appearing,

telephoning or initiating communication or contact at such person's place of

employment or business, and the actor was previously clearly informed to cease

that conduct.

91. A civil analog based on this criminal statue is appropriate.

92. Defendant Coscoros' was told to cease and desist from his conduct and this conduct was

such as to reasonably cause plaintiff to fear for her emotional, physical and professional well

being.

93. By acting as aforedescribed, defendants acted with malice or with reckless disregard for

plaintiff's rights, causing her injury and entitling her to money damages in the amount of an

additional  $5,000,000.00

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

94. Plaintiff repeats and re-alleges the facts asserted in paragraphs 1 through 93 above as if restated fully herein

95. Defendants acted intentionally or recklessly.

96. Defendants intended both to do the act and to produce emotional distress.

97. Defendants acted in deliberate disregard of a high degree of probability that emotional distress will follow.

98. Defendant's conduct *in toto* was extreme and outrageous.

99. Defendants"conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

100. The defendant's actions were the proximate cause of plaintiff's emotional distress.

101. Plaintiff's emotional distress suffered by plaintiff must be so severe that no reasonable person could be expected to endure such distress.

102. Defendants' conduct was sufficiently severe to cause genuine and substantial emotional distress or mental harm to the average person similarly situated to the plaintiff.

103. By acting as aforedescribed, defendants acted with malice or with reckless disregard for plaintiff's rights, causing her injury and entitling her to money damages in the amount of an additional $1,000,000.00

## COUNT VII
## AGE DISCRIMINATION

18

104. Plaintiff repeats and re-alleges the facts asserted in paragraphs 1 through 103 above as if restated fully herein

105. Plaintiff has suffered myriad adverse actions caused by defendants (wrongful discharge, hostile work environment, etc).

106. Plaintiff was 40 years of age or older at the time of these adverse action;

107. Plaintiffs's age was a motivating factor in the wrongful acts of Defendants.

108. By acting as aforedescribed, defendants acted with malice or with reckless disregard for plaintiff's rights, causing her injury and entitling her to money damages in the amount of an additional $500,000.00

**COUNT VIII**
**UNLAWFUL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**AND/OR INJURY TO BUSINESS REPUTATION**

109. Plaintiff repeats and re-alleges the facts asserted in paragraphs 1 through 108 above as if restated fully herein

110. Defendant Coscoros has made false and malicious allegations challenging the competency and integrity of Plaintiff to co-defendants, to other employees, and, upon information and belief, to others in the private management of the ultra rich which is a relatively small and intimate community.

111. Plaintiff had a reasonable expectation of economic advantage or benefit belonging or accruing to her due to her heretofore excellent professional history.

112. The defendants had knowledge of such expectancy of economic advantage;

113. This injury by defendant Coscoros wrongfully and without justification interfered with

19

plaintiff's expectancy of economic advantage or benefit;

114. In the absence of the wrongful act of the defendant, it is reasonably probable that the plaintiff would have realized her a significant economic advantage or benefit.

115.  Instead the plaintiff sustained  damages quantum of which shall be shown at trial.

116.  By acting as aforedescribed, defendants acted with malice or with reckless disregard for plaintiff's rights, causing her injury and entitling her to money damages in the amount of an additional  $500,000.00

## COUNT VIII
## SLANDER AND DEFAMATION

117.  Plaintiff repeats and re-alleges the facts asserted in paragraphs 1  through 116 above as if restated fully  herein

118.  Defedant Coscoros has made  false statements of fact that Plaintiff is incompetent and has failed to perform her duties.

119.  These false satements are  defamatory statement is a statement of fact which is injurious to the reputation of [plaintiff], or which exposes plaintiff to contempt or ridicule, and to  a loss of the good will and confidence felt toward him/her by others, or which has a tendency to injure her in her trade or business.

120 These false statements of Defendants are clearly defamatory to Plaintiff as it it exposes her to the contempt and ridicule of others;

121.By acting as aforedescribed, defendants acted with malice or with reckless disregard for

plaintiff's rights, causing her injury and entitling her to money damages in the amount of an additional $500,000.00

**WHEREFORE**, Plaintiff respectfully requests judgment in her favor and against Defendants as follows:

A. Compensatory damages for Plaintiff' lost wages as well as for her psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's un-reimbursed out of pocket expenses incurred in response to these circumstances;

B. Compensatory damages for Plaintiff's illness, including the pain and suffering of the condition and the limits and loss of enjoyment of life and costs of treatment of same.

C. Punitive damages;

D. Injunctive relief requiring Defendants to rehire Plaintiff and maintain benefits. .

E. Statutory interest;

F. Costs; and

G. Reasonable attorney fees.

Respectfully submitted,

Date: Jersey City, NJ
May 8, 2017

Daniel W. Sexton, Esq. (DS1789)
Counsel for Plaintiff
329 Pacific Avenue
Jersey City, NJ
(201) 406 - 9960
DanielSextonEsq@gmail.com

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands trial by jury.

Date:   Jersey City, New Jersey
May 8, 2017

Daniel W. Sexton, Esq. (DS1789)
Counsel for Plaintiff
329 Pacific Avenue
Jersey City, NJ
(201) 406 - 9960
DanielSextonEsq@gmail.com